**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| CANCER STEP OUTSIDE THE BOX, LLC, et al., | |
| Plaintiffs, | Civil Action No. 3:24-cv-01465 |
| v. | Judge Aleta A. Trauger |
| DEPARTMENT OF STATE, et al., | JURY DEMAND |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**META PLATFORMS, INC.'S MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 1

- A. Meta and its Terms of Service. ........ 1
- B. Plaintiffs and Their Use of Facebook and Instagram. ........ 4

LEGAL STANDARD ........ 6

ARGUMENT ........ 7

I. META'S FORUM-SELECTION CLAUSES REQUIRE TRANSFER. ........ 7

- A. Meta's Forum-Selection Clauses Are Applicable, Mandatory, Valid, and Enforceable. ........ 7
  - 1. Meta's Forum-Selection Clauses Are Applicable. ........ 7
  - 2. The Forum-Selection Clauses Are Mandatory. ........ 10
  - 3. The Forum-Selection Clauses Are Valid and Enforceable. ........ 11
- B. The Public Interest Does Not Justify Disregarding the Parties' Agreement. ........ 14

II. IF NECESSARY, THE COURT SHOULD SEVER AND TRANSFER THE CLAIMS AGAINST META. ........ 17

CONCLUSION ........ 19

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)............*passim*

*Baugh v. Novak*,
340 S.W.3d 372 (Tenn. 2011)............13

*Berkeley Rsch. Grp., LLC v. S. Advanced Materials, LLC*,
2024 WL 3738456 (Tenn. Ct. App. Aug. 9, 2024)............8, 11

*Bodor v. Green Tree Servicing, LLC*,
2007 WL 2409675 (Tenn. Ct. App. Aug. 24, 2007)............10

*Children's Health Def. v. Facebook Inc.*,
546 F. Supp. 3d 909 (N.D. Cal. 2021)............16

*Cobble v. 20/20 Commc'ns, Inc.*,
2018 WL 1026272 (E.D. Tenn. Feb. 23, 2018)............2

*Davis v. Meta Platforms, Inc.*,
2023 WL 4670491 (E.D. Tex. July 20, 2023)............10, 15

*Dolin v. Facebook, Inc.*,
289 F. Supp. 3d 1153 (D. Haw. 2018)............12

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012)............12

*Fam. Wireless #1, LLC v. Auto. Techs., Inc.*,
2015 WL 5142350 (E.D. Mich. Sept. 1, 2015)............18, 19

*Firexo, Inc. v. Firexo Grp. Ltd.*,
99 F.4th 304 (6th Cir. 2024)............*passim*

*Hataway v. McKinley*,
830 S.W.2d 53 (Tenn. 1992)............8

*Hayes v. Facebook*,
2019 WL 8275335 (D. Colo. Mar. 6, 2019)............12

*Hefferan v. Ethicon Endo-Surgery Inc.*,
828 F.3d 488 (6th Cir. 2016)............14

*Hubbard Media Grp., LLC v. Instagram, Inc.*,
2021 WL 6841640 (D. Minn. May 5, 2021)............12, 15

*Johnson v. UMG Recordings, Inc. by MCA Recs., Inc.*, 2018 WL 4111912 (M.D. Tenn. Aug. 29, 2018) .......... 15

*Kidstar v. Facebook, Inc.*, 2020 WL 4382279 (D.N.J. July 31, 2020) .......... 12, 15

*Korman v. Princess Cruise Lines, Ltd.*, 243 Cal. Rptr. 3d 668 (Ct. App. 2019) .......... 10

*Kresser v. Advanced Tactical Armament Concepts, LLC*, 2016 WL 4991596 (E.D. Tenn. Sept. 16, 2016) .......... 19

*Lemons v. Cloer*, 206 S.W.3d 60 (Tenn. Ct. App. 2006) .......... 8

*Loomer v. Facebook, Inc.*, 2020 WL 2926357 (S.D. Fla. Apr. 13, 2020) .......... 12

*Loveland v. Facebook*, 2021 WL 1734800 (E.D. Pa. May 3, 2021) .......... 12, 13

*Mahoney v. Facebook, Inc.*, 2022 WL 1523196 (M.D. Tenn. May 13, 2022) .......... 11, 12

*Martin v. Lotic.AI, Inc.*, 2024 WL 3422006 (S.D. Ohio July 16, 2024) .......... 15

*Mayer v. gpac, LLP*, 2023 WL 3690235 (M.D. Tenn. May 26, 2023) .......... 6, 14, 19

*Moates v. Facebook Inc.*, 2021 WL 3013371 (E.D. Tex. May 14, 2021) .......... 12

*Moates v. Facebook, Inc.*, 2022 WL 2707745 (E.D. Tex. June 13, 2022) .......... 9, 11

*O'Handley v. Padilla*, 579 F. Supp. 3d 1163 (N.D. Cal. 2022) .......... 16

*Olinick v. BMG Ent.*, 42 Cal. Rptr. 3d 268 (Ct. App. 2006) .......... 10

*Page v. GameStop Corp.*, 2025 WL 637441 (6th Cir. Feb. 27, 2025) .......... 13

*Palinode, LLC v. Plaza Servs., LLC*, 2021 WL 4460509 (M.D. Tenn. Sept. 28, 2021) .......... 17

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ........................................................................................14

*Rice v. Downs*,
203 Cal. Rptr. 3d 555 (Ct. App. 2016)........................................................................8, 9

*Rogalinski v. Meta Platforms, Inc.*,
No. 8:21-cv-1749 (M.D. Fla. Apr. 22, 2022), ECF No. 31 ......................................12

*In re Rolls Royce Corp.*,
775 F.3d 671 (5th Cir. 2014) ..................................................................................18, 19

*Scott v. RVshare LLC*,
2022 WL 866259 (M.D. Tenn. Mar. 22, 2022) ........................................................13

*Showhomes Franchise Corp. v. LEB Sols., LLC*,
2017 WL 3674853 (M.D. Tenn. Aug. 24, 2017) .........................................................6

*Soffin v. eChannel Network, Inc.*,
2014 WL 2938347 (S.D. Fla. June 30, 2014) ...........................................................12

*Thomas v. Facebook, Inc.*,
2018 WL 3915585 (E.D. Cal. Aug. 15, 2018) ...........................................................12

*Trump v. Facebook, Inc.*,
No. 1:21-cv-22440 (S.D. Fla. Nov. 19, 2021), ECF No. 108 .....................................12

*Webseed, Inc. v. Dep't of State*,
2025 WL 996458 (W.D. Tex. Feb. 24, 2025)........................................................10, 12

*Wilson v. 5 Choices, LLC*,
776 F. App'x 320 (6th Cir. 2019) ..............................................................................17

*Wise Guys I v. Meta Platforms, Inc.*,
2023 WL 8434452 (N.D. Tex. Dec. 4, 2023) ........................................................9, 11

*Wong v. PartyGaming Ltd.*,
589 F.3d 821 (6th Cir. 2009) ....................................................................................11

**Statute**

28 U.S.C. § 1404(a) .................................................................................................*passim*

**Rule**

Fed. R. Civ. P. 21 ......................................................................................................18

**Other Authorities**

Restatement (Second) of Conflict of Laws (Am. L. Inst. 1971)........................................................8

Rumble, *Website Terms and Conditions of Use and Agency Agreement* (Sept. 2, 2024), https://perma.cc/Y6X9-4XGG..........................................................................12

*Table NA—U.S. District Courts – Federal Court Management Statistics—Profiles* (Mar. 31, 2024), https://perma.cc/3M7E-C4PX ........................................................15

X Corp., *Terms of Service* (Sept. 29, 2023), https://perma.cc/N55Q-ZWZ8 ..................................12

YouTube, *Terms of Service* (Dec. 15, 2023), https://perma.cc/443Z-CA7X ..................................11

## INTRODUCTION

In their more-than-300-page Amended Complaint, Plaintiffs fail to assert a single actionable claim against Meta Platforms, Inc. ("Meta"). Yet before this Court (or any court) addresses the legal deficiencies in the Amended Complaint, it should first address a threshold defect: Cancer Step Outside the Box, LLC, Ty Bollinger, and Charlene Bollinger ("Plaintiffs") sued Meta in the wrong forum. Given the existence of a binding and mandatory forum-selection clause, the Court should decline to hear the claims against Meta and transfer them to the Northern District of California—the forum in which Plaintiffs agreed to bring any lawsuit against Meta that arises out of or relates to the Company's Terms of Service, as this case does.

## BACKGROUND

### A. Meta and its Terms of Service.

Meta is a public company headquartered in San Mateo County, California. Doc. 7 ("Am. Compl.") ¶ 54. It operates a variety of online applications, including Facebook and Instagram, which billions of individuals worldwide use to post, share, and view content in a variety of media formats.

Meta invests significant resources into developing and enforcing rules and standards for user-created content posted to Facebook and Instagram. Each of Facebook's and Instagram's content policies are set forth in Meta's Community Standards, which Facebook and Instagram users agree to follow under Facebook's Terms of Service and Instagram's Terms of Use ("Terms").[1]

[1] At various times, Facebook's and Instagram's Terms also have been referred to as "Terms of Use" or a "Statement of Rights and Responsibilities." As used in this motion, the reference to "Terms" includes all of these formulations.

Since at least 2004, Facebook has required all users to agree to Facebook's Terms when registering an account. *See* Decl. of Meghan Andre ¶ 6 (filed contemporaneously herewith).[2] Before clicking the button to complete the registration process, Facebook presents prospective users with a message stating that, by creating an account, they agree to abide by Facebook's Terms. *See id.* ¶ 7. This message includes a hyperlink to Facebook's then-applicable Terms, *see id.*, which informs all Facebook users that its "Terms govern [their] use of Facebook." Ex. B at 2 (Facebook's Terms effective July 26, 2022).[3] Facebook's Terms also include Facebook's stated "need to update [its] Terms from time to time," a notification "giv[ing] [users] an opportunity to review [updates] before they go into effect," an opportunity to opt out of any updates, and a notification that "[o]nce any updated Terms are in effect, you will be bound by them if you continue to use [Facebook's] products." *Id.* at 9.

The same is true of Instagram. Since at least 2012, Instagram has required all users to agree to Instagram's Terms when registering an account. *See* Andre Decl. ¶ 12. Instagram's Terms, which are publicly available, inform all Instagram users that the Terms "govern [their] use of Instagram." Ex. KK (Instagram's Terms effective July 26, 2022) at 2; *see also* Andre Decl. ¶ 11. Instagram's Terms also include Instagram's stated need for updating its Terms, a notification "giv[ing] [users] an opportunity to review [updates] before they go into effect," an opportunity to opt out of any updates, and a notification that "if [users] continue to use the Service, [they] will be bound by the updated Terms." Ex. KK at 9.

---

2 In considering a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), a court "may ordinarily consider evidence and testimony beyond the pleadings." *Cobble v. 20/20 Commc'ns, Inc.*, 2018 WL 1026272, at *8 (E.D. Tenn. Feb. 23, 2018) (considering sample forum-selection-clause agreements provided by defendants).

3 All exhibits are attached to the Declaration of Meghan Andre.

Facebook's and Instagram's respective Terms have long-included a mandatory California forum-selection clause. Facebook's clause has existed since at least 2005. *See* Andre Decl. ¶ 10. Although the exact language has undergone minor revisions over the years, it has always required suits arising out of or relating to Facebook's Terms to be brought in state or federal court in California. *See* Exs. A-II. In December 2024, when Plaintiffs filed this lawsuit, Facebook's Terms provided as follows:

> You and Meta each agree that ***any claim, cause of action, or dispute between us that arises out of or relates to these Terms or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California*** or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions.

Ex. B at 11 (emphasis added).

The operative version of Instagram's Terms is similar. The version in effect when Plaintiffs filed suit specified that:

> Except as provided below, ***you and we agree that any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram … will be resolved exclusively in the U.S. District Court for the Northern District of California*** or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim. The laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions.[4]

Ex. KK at 8-9 (emphasis added).

---

[4] Instagram's Terms also contain an arbitration provision and a separate carve-out for claims brought in small claims court. Ex. KK at 8. Neither provision applies here, as Meta is not seeking to compel arbitration and Plaintiffs did not bring this suit in small claims court. Instagram's Terms are clear about cases like this: "any claim that is not arbitrated or resolved in small claims court … will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." *Id.* at 9.

### B. Plaintiffs and Their Use of Facebook and Instagram.

Plaintiffs Ty and Charlene Bollinger own equal shares of Cancer Step Outside the Box, LLC ("CSOB"). Am. Compl. ¶ 357. CSOB is a holding company that owns TTAC Publishing, LLC, and TTAV Global, LLC.[5] *Id.* Numerous Facebook and Instagram accounts are controlled by the Bollingers, two of which are identified by name in the Amended Complaint: the Facebook account "Ty Charlene Bollinger" and the Instagram account "thetruthaboutvaccinesttav." *See* Am. Compl. ¶¶ 363, 380, 421, 461, 472-73, 492-93, 506; *see also* Andre Decl. ¶ 16. Other accounts controlled by Plaintiffs include "The Truth About Cancer" (Facebook), "CancerTruth" (Facebook), "ty.charlene.bollinger" (Instagram), and "thetruthaboutcancerttac" (Instagram). *See* Andre Decl. ¶ 17.

When Plaintiffs created these accounts, Facebook and Instagram presented them (like all other Facebook and Instagram users) with the Terms in force at the time. *See* Andre Decl. ¶¶ 6-7, 11-12. By proceeding with registration, Plaintiffs agreed to abide by those Terms. As relevant here, Plaintiffs agreed to resolve "any claim, cause of action, or dispute" against the Company "in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Ex. B at 11 (Facebook); *see also* Ex. KK at 8-9 (Instagram). Plaintiffs also acknowledged that by continuing to use Facebook and Instagram, they assented to any modifications to those Terms. *See* Ex. B at 9 (Facebook); *see also* Ex. KK at 9 (Instagram).

Plaintiffs initiated this lawsuit in December 2024, alleging "a systemic, systematic effort by the Government" and social media companies to "weaponize[] the digital landscape" by "silenc[ing] opposition and control[ling] public discourse." Am. Compl. ¶ 2. Only a handful of

---

[5] "TTAC" stands for "The Truth About Cancer" and "TTAV" stands for "The Truth About Vaccines." Am. Compl. at ¶ 357.

the 834 paragraphs in the Amended Complaint allege specific conduct by Meta concerning Plaintiffs. *See*, *e.g.*, *id.* ¶¶ 363, 380, 398, 421, 461, 462, 472, 473, 492, 493, 506-08. To summarize, Plaintiffs allege that Meta took enforcement actions against their accounts, including removing their posts and restricting their accounts, *see*, *e.g.*, *id.* ¶¶ 363 (@thetruthaboutvaccinesttav), 380 (Ty Charlene Bollinger). Plaintiffs allege that Meta's enforcement actions against Plaintiffs' accounts were ultimately at the direction of the United States Government and non-governmental organizations coordinating together to "pressur[e] platforms to silence those critical of COVID-19 policies." *Id.* ¶ 358. Plaintiffs further allege that the Government and non-governmental organizations worked together "to suppress dissent under the pretext of combating 'misinformation,'" which had the effect of "silencing opposition," "eliminating competing viewpoints," and "disrupt[ing] advertising revenue streams." *Id.* From these allegations, Plaintiffs seek from Meta actual damages, statutory damages, attorneys' fees, costs, injunctive relief, and six-months imprisonment. *See id.* ¶¶ 715, 720, 768, 778, 782, 786, 790, 797, 802, 808, 816 (requesting jail time in a civil case).

At the time Plaintiffs initiated this suit, the operative version of Facebook's Terms provided that "any claim, cause of action, or dispute between us that arises out of or relates to these Terms or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California." Ex. B at 9; *see also* Andre Decl. ¶ 8 (stating that these Terms have been in effect since July 2022). Likewise, the operative version of Instagram's Terms provided that "any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram … will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Ex. KK at 8-9;

*see also* Andre Decl. ¶ 13 (stating these Terms have been in effect since July 2022). Notwithstanding their agreement to the contrary, Plaintiffs filed suit in this district.

Meta now moves to transfer this case to the Northern District of California in accordance with its forum-selection clauses.

**LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When a party moves to enforce a forum-selection clause, this Court and other district courts in the Sixth Circuit perform a two-step analysis. *See Mayer v. gpac, LLP*, 2023 WL 3690235, at *2 (M.D. Tenn. May 26, 2023). First, a court must consider "whether the forum-selection clause is [1] applicable, [2] mandatory, [3] valid, and [4] enforceable." *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 311 (6th Cir. 2024) (citation omitted); *see also Showhomes Franchise Corp. v. LEB Sols., LLC*, 2017 WL 3674853 (M.D. Tenn. Aug. 24, 2017). Second, where the court concludes that "the parties have agreed to a valid forum-selection clause," the plaintiff then "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013). In trying to satisfy that burden, "the plaintiff's choice of forum merits no weight." *Id.* at 63. Instead, the court "may consider arguments about public-interest factors only." *Id.* at 64. Because the public interest "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

## ARGUMENT

## I. META'S FORUM-SELECTION CLAUSES REQUIRE TRANSFER.

By registering for Facebook and Instagram accounts and using these services, Plaintiffs contractually agreed to bring any claim that "arises out of or relates to" Meta's Terms or Plaintiffs' use of Facebook or Instagram in the Northern District of California—the forum where Meta is headquartered and where the vast majority of Meta's employees and evidence relevant to this lawsuit are likely located. The Court should hold Plaintiffs to their agreement. Meta's forum-selection clauses are applicable, mandatory, valid, and enforceable. And none of the public-interest factors courts have identified in this context counsel against transfer. Accordingly, the Court should grant a transfer pursuant to 28 U.S.C. § 1404(a).

### A. Meta's Forum-Selection Clauses Are Applicable, Mandatory, Valid, and Enforceable.

Meta's forum-selection clauses are applicable, mandatory, valid, and enforceable. Plaintiffs' claims that their posts were actioned plainly "arise[] out of or relate[] to" Meta's Terms, so the clauses are applicable. The forum-selection clauses point "exclusively" towards "the U.S. District Court for the Northern District of California or a state court located in San Mateo County" for resolution of any claims therein, so they are mandatory. And Plaintiffs entered into Meta's publicly available forum-selection clauses voluntarily—not as a result of fraud, duress, or any other similar circumstances—so the clauses are valid and enforceable. For those reasons, Meta's forum-selection clauses are applicable, mandatory, valid, and enforceable.

#### 1. Meta's Forum-Selection Clauses Are Applicable.

Meta's forum-selection clauses are applicable to Plaintiffs and their claims. Applicability determines "whether and how a [forum-selection clause] applies to the parties or claims in a lawsuit." *Firexo*, 99 F.4th at 309. In determining whether a lawsuit falls within the scope of a

forum-selection clause, "a federal court sitting in diversity begins with a conflict-of-laws analysis using the law of the State in which it sits (here [Tennessee]) to determine the governing law, and then interprets the contract provision under that law." *Id.* at 327. Tennessee follows "the Restatement (Second)'s approach in resolving choice of law conflicts." *Lemons v. Cloer*, 206 S.W.3d 60, 65 (Tenn. Ct. App. 2006) (citing *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). The Restatement applies the law of the state chosen by the parties. *See* Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1971); *e.g.*, *Berkeley Rsch. Grp., LLC v. S. Advanced Materials, LLC*, 2024 WL 3738456, at *3 (Tenn. Ct. App. Aug. 9, 2024) (enforcing choice-of-law provision), *perm. app. granted*, 2025 WL 383679 (Tenn. Jan. 27, 2025). Here, the parties expressly agreed that California law governs "any claim, cause of action, or dispute." Ex. B at 11 (Facebook); *see also* Ex. KK at 9 (Instagram) (stating that California law governs "these Terms and any claim").

Applying California law, the forum-selection clauses apply to Plaintiffs' claims against Meta. Meta's forum-selection clauses require "that any claim, cause of action, or dispute … that arises out of or relates to these Terms or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California." Ex. B at 11 (Facebook); *see also* Ex. KK at 8-9 (Instagram) ("[A]ny cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram … will be resolved exclusively in the U.S. District Court for the Northern District of California"). And California law is clear that clauses using language such as "any claim arising from or related to" are interpreted "broadly." *Rice v. Downs*, 203 Cal. Rptr. 3d 555, 563-64 (Ct. App. 2016) (emphasis and citations omitted) (collecting cases). These clauses cover "every dispute between the parties having a significant relationship to the contract"—including both contract liabilities and torts—so long as

the complaint's "factual allegations" in any way "'touch matters' covered by the contract." *Id.* (citation omitted). For two independent reasons, Plaintiffs' claims "touch matters covered by the contract."

***First***, each of Plaintiffs' claims against Meta "arises out of or relates to" Facebook's and Instagram's Terms. Ex. B at 11 (Facebook); *see also* Ex. KK at 8 (Instagram). Regardless of the legal theory on which they rest, Plaintiffs' Meta-related claims depend on the same factual allegations: that Facebook and Instagram blocked, removed, restricted, or took similar content-moderation actions against Plaintiffs' posts or accounts. *E.g.*, Am. Compl. ¶¶ 363 (account suspended), 380 (account suspended), 421 (post removed), 472 (post removed), 492 (account suspended). In other words, Plaintiffs' claims are based on how they used Facebook and Instagram and each platform's decision to restrict Plaintiffs' access to its services. Facebook's Terms expressly "govern [users'] use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software [Meta] offer[s]." Ex. B at 2. And Instagram's Terms expressly "govern [users'] use of Instagram." Ex. KK at 2. For this reason, multiple courts have concluded that these are exactly the sort of disputes contemplated by the parties' forum-selection clauses. *See Wise Guys I v. Meta Platforms, Inc.*, 2023 WL 8434452, at *2 (N.D. Tex. Dec. 4, 2023); *Moates v. Facebook, Inc.*, 2022 WL 2707745, at *5-6 (E.D. Tex. June 13, 2022), *report and recommendation adopted*, 2022 WL 2705245 (E.D. Tex. July 12, 2022).

***Second***, Plaintiffs' claims against Meta "arise[] out of or relate[] to" Facebook's and Instagram's Terms, which required Plaintiffs to comply with Meta's Community Standards. *See* Ex. B at 6, 11 (Facebook); *see also* Ex. KK at 4, 8 (Instagram). Plaintiffs' allegations confirm as much. They allege that the conspiracy in which Meta supposedly participates is "effectuated by Big Tech's arbitrary (unsubstantiated, at the very least) contention that its users' competitive

materials purportedly violated deliberately ambiguous 'Community Standards.'" Am. Compl. ¶ 207. In other words, Plaintiffs dispute the lawfulness of Meta's Community Standards and how they are applied, and this dispute is what forms the basis for their case. This is nothing more than a dispute about Meta's Terms themselves—Terms that make clear that Meta can "remove or restrict access to content that is in violation of" its Community Standards. Ex. B. at 7. For these reasons, Meta's forum-selection clauses are applicable to Plaintiffs and their claims.[6]

**2. The Forum-Selection Clauses Are Mandatory.**

Meta's forum-selection clauses are also mandatory. Under California law, a forum-selection clause is mandatory if it "contains express language of exclusivity of jurisdiction" and "specif[ies] a mandatory location for litigation." *Olinick v. BMG Ent.*, 42 Cal. Rptr. 3d 268, 274 (Ct. App. 2006); *see also Korman v. Princess Cruise Lines, Ltd.*, 243 Cal. Rptr. 3d 668, 676 (Ct. App. 2019). The clauses provide that covered causes of action "***shall*** be resolved ***exclusively*** in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Ex. B at 11 (Facebook) (emphasis added); *see also* Ex. KK at 9 (Instagram) (agreeing that covered causes of action "will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County"). Interpreting this exact language under California law, numerous courts—including one just two months ago, in a suit based on very similar allegations—have held that this language designates an exclusive forum. *See Webseed, Inc. v. Dep't of State*, 2025 WL 996458, at *5 (W.D. Tex. Feb. 24, 2025), *report and recommendation adopted*, 2025 WL 993375 (W.D. Tex. Apr. 1, 2025); *see also Davis v. Meta*

[6] Meta's forum-selection clauses would be "applicable" under Tennessee law as well. *See Bodor v. Green Tree Servicing, LLC*, 2007 WL 2409675, at *3 (Tenn. Ct. App. Aug. 24, 2007) ("Courts have consistently found that broad arbitration clauses … encompass tort claims arising between the parties.").

*Platforms, Inc.*, 2023 WL 4670491, at *10 (E.D. Tex. July 20, 2023) (interpreting both Facebook's and Instagram's forum-selection clauses); *Moates*, 2022 WL 2707745, at *5-6. This District is in accord. *See Mahoney v. Facebook, Inc.*, 2022 WL 1523196, at *2 (M.D. Tenn. May 13, 2022). In short, "[t]he words 'shall' and 'exclusively' are mandatory." *Wise Guys*, 2023 WL 8434452, at *2.[7]

**3. The Forum-Selection Clauses Are Valid and Enforceable.**

Meta's forum-selection clauses are also valid and enforceable. "[F]ederal law governs the enforceability of a forum-selection clause in a diversity suit." *Firexo*, 99 F.4th at 309 (citation omitted). The Sixth Circuit starts "with the presumption that '[c]ourts should uphold a forum-selection clause unless there is a strong showing that the clause should be set aside.'" *Id.* (alteration in original) (citation omitted). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). To this end, the party opposing the forum-selection clause must prove that (1) "the clause was obtained by fraud, duress, or other unconscionable means," (2) "the designated forum would ineffectively or unfairly handle the suit," or (3) "the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* The Sixth Circuit collapses the "validity" consideration into the first prong of the enforceability analysis. *See Firexo*, 99 F.4th at 309.

Forum-selection clauses are commonplace in terms of service, and courts routinely enforce them. *See, e.g.*, Andre Decl. ¶¶ 10, 15; YouTube, *Terms of Service* (Dec. 15, 2023),

[7] Meta's forum-selection clauses likewise would be "mandatory" under Tennessee law. *See Berkeley*, 2024 WL 3738456, at *3 ("In general, a contractual provision that selects a particular forum for any dispute is referred to as a forum selection clause and is enforceable and binding on the parties in our courts.").

https://perma.cc/443Z-CA7X; X Corp., *Terms of Service* (Sept. 29, 2023), https://perma.cc/N55Q-ZWZ8; Rumble, *Website Terms and Conditions of Use and Agency Agreement* (Sept. 2, 2024), https://perma.cc/Y6X9-4XGG. Facebook's Terms have included a forum-selection clause for nearly two decades, *see* Andre Decl. ¶ 10, and numerous federal district courts throughout the country, including the Middle District of Tennessee, have enforced Facebook's forum-selection clause, *see Mahoney*, 2022 WL 1523196, at *2.[8]

This Court should follow the same approach. Plaintiffs voluntarily agreed to Meta's unambiguous forum-selection clauses written in plain English. There can be no serious argument that Plaintiffs were defrauded into their agreements with Meta. Before completing the registration process, Facebook presented Plaintiffs with a message telling them that by signing up for a Facebook account, they were agreeing to its Terms, as well as a hyperlink to the then-current Terms. *See* Andre Decl. ¶ 7. Instagram also required Plaintiffs to acknowledge that they agreed to Instagram's Terms. *See id.* ¶ 12. Meta's forum-selection clauses are not "deceptively placed or sized"—any user can "easily read the Terms of Service and discover[] them." *Moates v. Facebook Inc.*, 2021 WL 3013371, at *7 (E.D. Tex. May 14, 2021).

---

[8] *See, e.g.*, *Webseed*, 2025 WL 996458, at *1 (recommending transfer against nearly identical parties on a nearly identical theory); Order, *Rogalinski v. Meta Platforms, Inc.*, No. 8:21-cv-1749 (M.D. Fla. Apr. 22, 2022), ECF No. 31; *Hubbard Media Grp., LLC v. Instagram, Inc.*, 2021 WL 6841640, at *5 (D. Minn. May 5, 2021); Order at 11-16, *Trump v. Facebook, Inc.*, No. 1:21-cv-22440 (S.D. Fla. Nov. 19, 2021), ECF No. 108; *Loomer v. Facebook, Inc.*, 2020 WL 2926357, at *1-3 (S.D. Fla. Apr. 13, 2020); *Soffin v. eChannel Network, Inc.*, 2014 WL 2938347, at *1-2 (S.D. Fla. June 30, 2014); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1160 (D. Haw. 2018); *Loveland v. Facebook*, 2021 WL 1734800, at *4-6 (E.D. Pa. May 3, 2021); *Kidstar v. Facebook, Inc.*, 2020 WL 4382279, at *3-5 (D.N.J. July 31, 2020); *Hayes v. Facebook*, 2019 WL 8275335, at *2-3 (D. Colo. Mar. 6, 2019); *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900-03 (S.D. Ill. 2012).

Plaintiffs were "under no obligation or duress at the time when they entered into the agreement[s]" with Facebook and Instagram. *Loveland v. Facebook*, 2021 WL 1734800, at *5 (E.D. Pa. May 3, 2021). To the contrary, Plaintiffs presumably agreed to the Terms because they wanted to use Facebook and Instagram to promote content for their accounts, including "Ty Charlene Bollinger" (Facebook) and "thetruthaboutvaccinesttav" (Instagram). It makes no difference that Plaintiffs manifested their assent with the click of a mouse. *See, e.g.*, *Page v. GameStop Corp.,* 2025 WL 637441, at *3 (6th Cir. Feb. 27, 2025) (recognizing the validity of clickwrap agreements); *Scott v. RVshare LLC*, 2022 WL 866259, at *4 (M.D. Tenn. Mar. 22, 2022) (enforcing clickwrap agreement that was "presented with the Terms of Service in clear text above or adjacent to the icon, and which would have only required a click of the mouse to open").

Nor is there any other basis for the Court to conclude that Meta's forum-selection clauses are unreasonable. The Northern District of California is a federal court like this one and thus is a fair forum with comparable remedies available for Plaintiffs. And it does not matter that a Tennessee forum may be more convenient for Plaintiffs, as "the plaintiff's choice of forum merits no weight" when the plaintiff has agreed to a forum-selection clause. *Atl. Marine*, 571 U.S. at 63.

Finally, enforcing the clause would not interfere with the strong public policy of Tennessee. To the contrary, "Tennessee law recognizes that the individual right of freedom of contract is a vital aspect of personal liberty." *Baugh v. Novak*, 340 S.W.3d 372, 382 (Tenn. 2011) (citation and internal quotation marks omitted). In Tennessee, "private autonomy, premised on the ability of individuals to order their own affairs, and the desirability of allowing them to do so, stands at the foundation of contract law." *Id.* at 382-83 (citation and internal quotation marks omitted). For this reason, Tennessee "courts allow parties to strike their own bargains" and "mak[e] legally enforceable promises"—as the parties did here. *Id.* (citations omitted).

*　　*　　*

Applying these clear standards, the Court should hold that Meta's forum-selection clauses are applicable, mandatory, valid, and enforceable. *See Firexo*, 99 F.4th at 304.

**B. The Public Interest Does Not Justify Disregarding the Parties' Agreement.**

Plaintiffs cannot point to private-interest factors to oppose transfer under an applicable, mandatory, valid, and enforceable forum-selection clause. *See Mayer*, 2023 WL 3690235, at *2 (citing *Atl. Marine*, 571 U.S. at 63-64). To the contrary, the private-interest factors "weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. And the party opposing transfer under an applicable, mandatory, valid, and enforceable forum-selection clause "bear[s] the burden of showing that public-interest factors ***overwhelmingly*** disfavor a transfer." *Id.* at 67 (emphasis added). The Sixth Circuit has recognized a finite number of public-interest factors: (1) "administrative difficulties flowing from court congestion"; (2) "the 'local interest in having localized controversies decided at home'"; (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action"; (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law"; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 500 (6th Cir. 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). And as this Court and the Supreme Court have emphasized, "the public interest factors 'will rarely defeat' a valid forum selection clause, [so] '***the practical result is that forum-selection clauses should control except in unusual cases***.'" *Mayer*, 2023 WL 3690235, at *2 (emphasis added) (quoting *Atl. Marine*, 571 U.S. at 64). This is not an unusual case: None of those factors disfavors transfer, let alone does so "overwhelmingly." *Atl. Marine*, 571 U.S. at 67.

***First***, transfer would not overly burden the Northern District of California and would avoid further burdening this Court's crowded docket. Recent federal data shows that the Middle District

of Tennessee is more congested than the Northern District of California, as the Northern District of California has a quicker median filing-to-disposition time for civil cases than the Middle District of Tennessee—7.6 versus 8.2 months, respectively. *See Table NA—U.S. District Courts – Federal Court Management Statistics—Profiles* (Mar. 31, 2024), https://perma.cc/3M7E-C4PX; *see Johnson v. UMG Recordings, Inc. by MCA Recs., Inc.*, 2018 WL 4111912, at *8 (M.D. Tenn. Aug. 29, 2018) (examining federal judicial caseload statistics to weigh court congestion). Thus, consideration of court congestion favors transfer.

***Second***, local interests support transfer to the Northern District of California, where Meta has a substantial portion of its businesses. To prove the opposite—that the local interests *disfavor* transfer—Plaintiffs "must provide more support than simply being inconvenienced by out-of-state litigation." *Martin v. Lotic.AI, Inc.*, 2024 WL 3422006, at *3 (S.D. Ohio July 16, 2024). "Simply residing and operating [a] business in [the forum state] d[oes] not make the case a localized controversy." *Id.* Courts across the nation thus have transferred cases pursuant to Facebook's forum-selection clause even where the plaintiff was a citizen of the forum state. *See, e.g.*, *Hubbard*, 2021 WL 6841640; *Kidstar*, 2020 WL 4382279; *see also Davis*, 2023 WL 4670491, at *10 (transferring case brought by plaintiff of forum state pursuant to Facebook's and Instagram's forum-selection clauses). It thus is not enough for Plaintiffs to point to their residency in this District to oppose transfer pursuant to their agreed-upon forum selection clauses. And on top of that, Plaintiffs' theory of the case is far from local: They allege that at least twelve Defendants—agencies and officers of the federal government, social-media companies with a global presence, and three out-of-state non-profits—conspired against them to "silence dissent." Am. Compl. ¶¶ 37, 80, 244. As applied to Meta, Plaintiffs complain that Meta suspended, restricted, or took other actions against their accounts and/or their posts. *Id.* ¶¶ 380, 421, 472, 492, 493, 506,

508. From these alleged actions, Plaintiffs allege a nationwide injury, specifically "reducing the revenue, reach, readership, and circulation of their reporting and speech." *Id.* ¶ 718; *see also id.* ¶ 719 (similar).[9] The localized interest factor favors transfer.

***Third***, the interest in having any eventual trial in a forum that is at home with the governing law favors transfer. This case involves claims under both federal and state law. As for the federal claims, the Northern District of California is similarly situated to this Court, as both are federal courts. For the state-law claims, Meta's Terms are clear that "the laws of the State of California will govern these Terms ***and any claim, cause of action, or dispute***." Ex. B at 11 (Facebook) (emphasis added); *see also* Ex. KK at 9 (Instagram) (agreeing that California law governs "these Terms and any claim"); *see also Atl. Marine*, 571 U.S. at 65-66 ("The court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right."). Not only is the Northern District of California familiar with applying California state law, it is especially familiar with adjudicating cases involving Meta, *see supra* note 8 (citing cases transferred pursuant to Meta's forum-selection clause), and disputes regarding content-moderation decisions made by online platforms more generally, *see, e.g.*, *O'Handley v. Padilla*, 579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909 (N.D. Cal. 2021), *aff'd sub nom. Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742 (9th Cir. 2024). Taking into account the Northern District of California's familiarity with disputes regarding Meta's services and the likelihood that California law will govern at least some of Plaintiffs' state-law claims, this factor also favors transfer.

[9] To highlight the point, Plaintiffs also seek nationwide injunctive relief for what they will now have to argue is a localized case. Am. Compl. at ¶ 720.

***Fourth***, there is no conflict-of-laws issue because Plaintiffs and Meta have already agreed that California's substantive law should apply. *See* Ex. B at 11 (Facebook) (providing that "the laws of the State of California will govern these Terms and any claim" that arises out of or relates to the Terms or Plaintiffs' use of Facebook); *see also* Ex. KK at 9 (Instagram). Thus, this factor does not provide a basis to deny transfer.

***Fifth***, in light of the four previously described factors weighing in favor of transfer, it would be unfair to burden Tennessee citizens with jury duty for a case applying California law, featuring evidence gathered in California, that Plaintiffs originally agreed to litigate in California.

* * *

Because none of the public-interest factors weighs in favor of keeping this dispute in this district—let alone overwhelmingly so—Plaintiffs cannot meet their burden of establishing that the public interest "overwhelmingly disfavor[s]" transfer. *Atl. Marine*, 571 U.S. at 67.

## II. IF NECESSARY, THE COURT SHOULD SEVER AND TRANSFER THE CLAIMS AGAINST META.

Plaintiffs' agreement to Facebook's and Instagram's Terms mandates a California forum, so all claims against Meta should be transferred. It would be within this Court's discretion to transfer claims against most (if not all) other Defendants[10] to the Northern District of California "in the interest of justice." 28 U.S.C. § 1404(a). What is clear, though, is that Plaintiffs cannot "avoid a valid forum-selection clause by naming a defendant … who is not a signatory or third-party beneficiary" to the forum-selection clause. *Palinode, LLC v. Plaza Servs., LLC*, 2021 WL 4460509, at *7 (M.D. Tenn. Sept. 28, 2021). *See also Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 328 (6th Cir. 2019) ("[T]he risk of multiple fora does not require this Court to disregard the

[10] Meta understands that X Corp. intends to move to transfer claims against it to the Northern District of Texas pursuant to the most recent version of that company's forum-selection clause.

forum-selection clauses in Plaintiffs' contracts with Property Defendants."). Thus, even if Plaintiffs are successful in arguing that the entire case should not be transferred, their claims against Meta should still be severed and transferred to the Northern District of California. *See* Fed. R. Civ. P. 21 ("[T]he court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

The Sixth Circuit has not directly considered whether to sever claims falling under an applicable, mandatory, valid, and enforceable forum-selection clause like those at issue here from claims against other parties that may not be subject to a forum-selection clause. But district courts within the Sixth Circuit have found the Fifth Circuit's *Rolls Royce* decision to be "helpful … in analyzing the issue[]." *Fam. Wireless #1, LLC v. Auto. Techs., Inc.*, 2015 WL 5142350, at *7 (E.D. Mich. Sept. 1, 2015) (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014)). In *Rolls Royce*, a plaintiff had asserted claims against three defendants. 775 F.3d at 674. One defendant invoked a forum-selection clause and moved to sever and transfer the claims against it to a different district, but the plaintiff and the other two defendants "opposed the severance and transfer." *Id.* The district court denied the motion, but the Fifth Circuit granted mandamus relief. As the Fifth Circuit explained, the fact that the plaintiff had signed the forum-selection clause meant that the plaintiff's interests, "as [a] matter of law, cut in favor of severance and transfer to the contracted for forum." *Id.* at 681. And though the non-signing defendants opposed transfer too, the Fifth Circuit noted the lack of "evidence in the record indicating special administrative difficulties with severance, or that the interests of the defendants not privy to the clause would be significantly threatened." *Id.* at 683. So even given the typical discretion district courts have to manage their dockets and rule on motions to sever, the Fifth Circuit found mandamus relief appropriate.

District courts within the Sixth Circuit have found the Fifth Circuit's reasoning in *Rolls Royce* to be persuasive, and this Court should follow the same course here. *See Fam. Wireless #1*, 2015 WL 5142350, at *7; *Kresser v. Advanced Tactical Armament Concepts, LLC*, 2016 WL 4991596, at *5 n.1 (E.D. Tenn. Sept. 16, 2016) (citing *Rolls Royce* favorably); *see also Mayer*, 2023 WL 3690235, at *3 (favorably citing the Fifth Circuit's forum-selection-clause case law post-*Atlantic Marine*). Plaintiffs agreed to a forum-selection clause with at least one of the Defendants, which means that they cannot now claim that their private interests weigh in favor of keeping this case in Tennessee. *See Rolls Royce*, 775 F.3d at 681 (stressing *Atlantic Marine*'s "principal conclusion that a reviewing court cannot consider the private interests of a party who entered into a forum selection clause"); *accord id.* at 679 (considering only the interests of non-signatories). Thus, if the Court elects not to transfer the entire action to the Northern District of California, it should at least sever and transfer Plaintiffs' claims against Meta.

## CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a). In the alternative, Meta requests that this Court sever and transfer the claims against Meta to the Northern District of California.

Dated: April 21, 2025

Respectfully submitted,

*/s/ Kathryn Hannen Walker*

Kathryn Hannen Walker (TN BPR #020794)
Charlotte G. Elam (TN BPR #038772)
BASS, BERRY & SIMS PLC
21 Platform Way, Suite 3600
Nashville, TN 37203
Telephone: (615) 742-6200
kwalker@bassberry.com
charlotte.elam@bassberry.com

Kasdin M. Mitchell (*pro hac vice*)
Jordan L. Greene (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
kasdin.mitchell@kirkland.com
jordan.greene@kirkland.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send e-mail notification of this filing to all counsel of record.

Jeffrey L. Greyber, Esq.
GREYBER LAW, PLLC
9170 Glades Rd., #161
Boca Raton, Florida 33434
jgreyber@greyberlaw.com

Larry L. Crain, Esq.
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Ste. 402
Brentwood, Tennessee 37027
larry@crainlaw.legal

*Counsel for Plaintiffs*

Mary Wu Tullis
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
mtullis@bakerdonelson.com

Jeremy D. Ray
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
jray@bakerdonelson.com

Kenneth M. Trujillo-Jamison (*pro hac vice*)
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, CA 90017
ktrujillo-jamison@willenken.com

*Counsel for Defendant X Corp.*

J. Graham Matherne
WYATT, TARRANT & COMBS, LLP
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
gmatherne@wyattfirm.com

Mark Voder-Bruegge
WYATT, TARRANT & COMBS, LLP
6070 Poplar Avenue, Suite 300
Memphis, Tennessee 38119
mvb@wyattfirm.com

Joshua Lerner (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
50 California Street, Suite 2600
San Francisco, CA 94111
joshua.lerner@wilmerhale.com

*Counsel for Defendant Google LLC*

Robb S. Harvey
Holland & Knight LLP
511 Union Street
Suite 2700
Nashville, TN 37219
robb.harvey@hklaw.com

*Counsel for Defendant Media Matters for America*

Lauren Paxton Roberts
STITES & HARBISON PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com

Jeffrey L. Poston (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
jposton@crowell.com

Jacob Canter (*pro hac vice*)
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
jcanter@crowell.com

*Counsel for Defendant Center for Internet Security, Inc.*

*/s/ Kathryn Hannen Walker*
Kathryn Hannen Walker